UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

DORA FIGUEIREDO,
                    Plaintiff,

        v.                                      C.A. No. 09-165ML

LIFE INSURANCE COMPANY OF
NORTH AMERICA,
                    Defendant.

MEMORANDUM AND ORDER

This case is before the Court on the parties' cross motions
for summary judgment. The plaintiff, Dora Figueiredo
("Figueiredo"), challenges the termination of long term disability
("LTD") benefits under an employee benefit welfare plan.
Figueiredo's five count complaint, initially filed in Rhode Island
state court, alleges breach of contract, negligence, intentional
and negligent infliction of emotional distress, and recklessness.
The defendant, Life Insurance Company of North America ("LINA"),
asserting that Figueiredo's action arises under the Employee
Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*
("ERISA"), removed the case to federal court.[1] For the reasons set

---

[1]

As LINA correctly points out, Figueiredo's claims, which are
based on state or common law, are preempted by ERISA. Defs.' Mem.
Mot. Sum. Judg. 6-7. See Ingersoll-Rand Co. v. McClendon, 498 U.S.
133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); Rosario-Cordero v.
Crowley Towing & Transp. Co., 46 F.3d 120, 125 n.2 (1st Cir.

1

forth below, the Court directs the parties to submit additional memoranda to address the merits of their respective positions.

I. Facts[2]

Figueiredo is a 57 year old Rhode Island resident who began employment with Osram Sylvania, Inc. ("Osram") in 1988.  AR 006. As part of her employment benefits, Figueiredo was a participant in Osram's Long Term Disability Plan (the "Plan"). SUF 1.  Osram purchased Group LTD Policy No. LK 030043 (the "Policy") from LINA, effective January 1, 1999, to fund benefits under the Plan. SUF 2, AR 117.

The Policy provides, *inter alia*, that "[s]atisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid." SUF 10, AR 133. In addition, the Policy states that "Disability Benefits will end . . .[on] [t]he date the Insurance Company determines an Employee is not Disabled." SUF 11, AR 133. Based on Figueiredo's age at

---

1995)("[T]his Circuit, following Supreme Court precedent, has held that ERISA preempts state laws if they relate to an ERISA plan, even indirectly"). In her complaint, which only asserts state law claims, Figueiredo has alleged that her benefits were wrongfully terminated and her appeal was unsuccessful. As such, her underlying claim clearly "relates to" ERISA plans.

[2]
The facts are based on LINA's Statement of Undisputed Facts (hereinafter cited as "SUF"), which Figueiredo has adopted in its entirety, and the Administrative Record submitted by the parties (hereinafter cited as "AR"). Although the AR consists of more than 650 pages, most of the documents appear to have been included multiple times.

the time she became disabled, any benefit payments to her terminate automatically at age 65.  AR 121.

The Policy provides the following definition of Disability:

An Employee is Disabled if, because of Injury or Sickness,

1. he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2. after Disability Benefits have been payable for 12 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.  SUF 12, AR 120, 123, 126, 129.

In September 2001, Figueiredo was employed as an "Inspector," which involved sorting and moving inventory in the Osram facility. SUF 3, see AR 644 (describing daily job duties as "fill boxes and put them on trays").  The DOT Occupational Requirements, which define the necessary Strength level for the occupation as "light," see SUF 3, further lists tasks for the occupation as "Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 LBS., or negligible amounts constantly.  Can include walking and or standing frequently even though weight is negligible.  Can include pushing and or pulling of arm and leg controls."  AR 516.

On September 24, 2001, Figueiredo was seen by her regular physician, Dr. Belarmino A. Nunes, M.D. ("Dr. Nunes"), for pain in her left knee and leg.  SUF 4, AR 205.  On October 11, 2001,

3

Figueiredo underwent an MRI of the left knee, which revealed an "undersurface tear of the posterior horn and body of the lateral meniscus." SUF 5, AR 236. On December 13, 2001, Orthopedic Surgeon Dr. Robert J. Fortuna ("Dr. Fortuna") performed an arthroscopic partial lateral meniscectomy on Figueiredo's left knee. AR 278.

As a Rhode Island resident, Figueiredo was initially entitled to state disability benefits. AR 93. On March 1, 2002, Figueiredo filed a claim with LINA for LTD benefits. SUF 7, AR 645-51. On April 30, 2002, Figueiredo received a notification from Cigna Group Insurance ("Cigna")[3] that her claim had been approved, SUF 9, AR 606. Benefit payments commenced on March 24, 2002. SUF 8, AR 006.

On July 25, 2002, Figueiredo was awarded social security disability insurance ("SSDI") payments. AR 97. The SSDI Award Notice states that Figueiredo became disabled on September 24, 2001. AR 588. Because she had to be "disabled for 5 full calendar months in a row before [she was] entitled to benefits," Figueiredo's first month of entitlement was March 2002.[4]

For the next three years, Figueiredo saw Drs. Fortuna and

---

[3]

Figueiredo dismissed all claims against Osram and Cigna by stipulation. Stip. April 15, 2009.

[4]

It appears that, once Figueiredo became eligible for SSDI, LINA's benefit payments to Figueiredo were limited to $100 monthly payments, the minimum coverage. See e.g. AR 532, AR 606.

Nunes on numerous occasions for varying complaints, including continuing difficulties with her knee, severe neck and arm pain, weakness of grip in the right hand, and numbness in the left leg. See Dr. Fortuna's Office Notes from November 12, 2001 through March 25, 1005. AR 263-66. AR 185-207.  Figueiredo underwent a number of diagnostic tests, including xrays and repeated MRIs, which indicated degenerative disc disease at C6-7. AR 224, AR 276.  She also participated in three separate series of physical therapy sessions. AR 283-84, AR 285-86, AR 395, 398.

In August 2005, LINA requested that Figueiredo's physicians submit a Physical Ability Assessment form (the "PAA Form") to assess her ability to return to work.  Dr. Fortuna indicated that Figueiredo was able to perform fine manipulation, simple grasp, and firm grasp "continuously;" sit "frequently"; stand, walk, and reach at desk level or below the waist "occasionally;" lift or carry 10 lbs. frequently; and lift or carry 20 lbs. occasionally.  AR 482. According to Dr. Nunes's PAA Form, with the exception of frequently performing simple or firm grasp with the left hand, Figueiredo could only occasionally stand, walk, reach or perform any of the other listed tasks.  AR 489.

Eventually, LINA advised Figueiredo by letter dated January 17, 2006 that her LTD benefits were discontinued as of December 23, 2005.  SUF 21, AR 473. The letter states that Figueiredo has the "functional capacity" to work in her occupation and that the

5

evidence does not support her inability to perform her occupation. AR 475.   LINA also advised Figueiredo that she could appeal the termination of her LTD benefits and that LINA "would be happy to consider any medical evidence which supports your total disability," including medical records for the period between January 2005 and January 2006.   SUF 22, AR 475.

After Figueiredo indicated she wished to appeal LINA's determination, LINA again reviewed Figueiredo's file and forwarded it to a LINA appeals unit.   LINA issued a final denial by letter dated June 6, 2007.   SUF 39, AR 149. As one of the grounds for its denial, LINA expressed that "[t]he medical documentation reviewed does not provide evidence of functional deficits by clinically measurable testing."   AR 149.   The June 6, 2007 letter advised Figueiredo that she had "a right to bring legal action regarding her claim under the ERISA section 502(a)."   AR 149.   On December 18, 2008, Figueiredo filed her claim for LTD benefits in Rhode Island Superior Court, which LINA removed based on ERISA preemption. SUF 40, 41.

After efforts to settle the case were unsuccessful, LINA filed a motion for summary judgment on October 30, 2009.   LINA took the position that, under the language of the Plan, the termination of Figueiredo's benefits must be reviewed under the "arbitrary and capricious" standard.   See LINA"s Mem. Mot. Sum. Judg. 7-8.   LINA asserted that Figueiredo had failed to demonstrate that she was

unable to perform the essential duties of any occupation and that, under the deferential standard, LINA "properly upheld the termination of benefits." Id. 13.

Figueiredo filed a motion for summary judgment in response on November 10, 2009. On her part, Figueiredo argued that, based on her medical records and certain affidavits provided by her treating physicians, "the decision of [LINA] to deny her continued benefits was a capricious and arbitrary act," without further addressing which standard of review was appropriate in this case. Figueiredo's Mem. Mot. Sum. Judg. p.7 of 8.

On December 29, 2009, this Court conducted a hearing on the parties' cross motions for summary judgment. Following the hearing, the Court directed the parties to file short memoranda addressing the question of which standard of review the Court should employ in considering the parties' motions. LINA filed a supplemental memorandum on January 19, 2010 and Figueiredo responded with a memorandum in opposition on January 26, 2010.

## II.  Standard of Review

A challenge of the denial of employee benefits arises under Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B).[5]  In ERISA

---

[5]

Section 502(a) states, in pertinent part: "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

cases, "where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). The Court's role is to make a determination "whether the administrator's action on the record before him was unreasonable." Liston v. Unum Corp. Officer Severance Plan, 330, F.3d 19, 24 (1st Cir. 2003). Doubts are resolved in favor of the administrator and, "no special inferences are to be drawn in favor of the plaintiff resisting in summary judgment." Id.; Orndorf v. Paul Revere Life Ins. Co., 404 F.3d at 517 (where summary judgment is simply a vehicle for deciding the issue, "the nonmoving party is not entitled to the usual inferences in its favor.").

Unless the benefit plan vests "authority to determine eligibility for benefits or to construe the terms of the plan in the plan administrator," the Court reviews the denial of benefits under an ERISA plan de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989)(denial of benefits to be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). In a de novo review, the Court determines "whether, upon a full review of the administrative record, the

decision of the administrator was correct." <u>Orndorf v. Paul Revere</u> <u>Life Ins. Co.</u>, 404 F.3d at 518.

Where the benefits plan provides that discretionary authority is vested in the administrator, the Court applies the more deferential "arbitrary and capricious" standard in reviewing a denial of benefits. <u>Pari-Fasano v. ITT Hartford Life and Accident</u> <u>Ins. Co.</u>, 230 F.3d 415, 419 (1st Cir. 2000)(noting that, in ERISA context, the terms "abuse of discretion," "arbitrary and capricious," and "unreasonableness" were functionally equivalent). Under this standard, a decision to deny benefits is not overturned unless it is "arbitrary, capricious, or an abuse of discretion." <u>Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan</u>, 402 F.3d 67, 74 (1st Cir. 2005). As long as the administrator's decision "was reasoned and supported by substantial evidence," the Court will uphold it. <u>Id.</u> The presence of evidence contrary to the administrator's decision "does not make the decision unreasonable, provided substantial evidence supports the decision." <u>Id.</u>

LINA asserts that, based on the language of the Plan, the administrator's decision to terminate Figueiredo's benefits is entitled to deferential review and that application of the arbitrary and capricious standard is appropriate in this case. In claiming deferential review, LINA assumes the burden of demonstrating that its decision to deny Figueiredo's long term benefits is entitled to such deference. <u>See</u> <u>Fay v. Oxford Health</u>

9

Plan, 287 F.3d 96, 104 (2d Cir. 2002)("The plan administrator bears the burden of proving that the deferential standard of review applies").

The Plan's Description of Benefits section, under the subheading "Disability Benefits," provides the following:

> "The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Period and be under Appropriate Care of a Physician. <u>Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.</u>"[6]   AR 133, SUF 10. (Emphasis added).

In its supplemental memorandum, LINA relies primarily on the First Circuit Case of <u>Brigham v. Sun Life of Canada</u>, 317 F.3d 72, 81 (1st Cir. 2003) to support its conclusion that the Plan's language is sufficient to convey discretionary authority to LINA. Specifically, LINA argues that "the Plan's requirement that 'satisfactory proof of Disability must be provided' to LINA warrants deferential review." LINA's Supp. Mem. 1.

In <u>Brigham</u>, the First Circuit acknowledged that "there remains considerable debate over what language constitutes a sufficiently clear grant of discretionary authority to transform judicial review from de novo to deferential." <u>Brigham v. Sun Life of Canada</u>, 317 F.3d at 81. Because courts have "consistently held that there are

---

[6] LINA makes no other reference to support its claim for deferential review and the plan contains no further language to indicate the level of authority vested in the administrator. AR 117 - 148.

no 'magic words' determining the scope of judicial review of decisions to deny benefits," the court "must in fairness carefully consider existing language that falls short of that ideal."[7]  Id. at 81.

The plan at issue in Brigham provided that the insurer "may require proof in connection with the terms or benefits of [the] Policy . . . If proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances." Brigham at 81 (emphasis in original opinion).  The Brigham Court noted that "Circuits that have considered similar language view the 'to us' after 'satisfactory' as an indicator of subjective, discretionary authority on the part of the administrator, distinguishing such phrasing from policies that simply require 'satisfactory proof' of disability, without specifying who must be satisfied." Brigham at 81.

The Brigham Court reviewed a number of cases from the Tenth, Eighth, and Seventh Circuit, which found similar language sufficient for discretionary review, e.g. Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1276-68 (10th Cir.

_____

[7]

The "ideal" refers to a proposition by Chief Judge Posner in Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000) to include the following "safe harbor" language in ERISA plans: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them . . . such language will not be open to being characterized as entitling the applicant for benefits to plenary judicial review of a decision turning him down."

2002)("Satisfactory to Sun Life"); Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002)("proof must be satisfactory to [the administrator]"); Herzberger v. Standard Ins. Co., 205 F.3d at 331("satisfactory to us").

By comparison, cases from the Seventh, Eighth, Second, and Ninth Circuit exemplified provisions deemed insufficient to convey discretionary authority on the administrator. Brigham at 81. See e.g. "Perugini-Christen v. Homestead Mortgage Co., 287 F.3d 624, 626-27 (7th Cir. 2002) (applicant to submit "satisfactory proof of Total Disability to [the insurer]"); Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839-40 (8th Cir. 2001)(applicant to submit "satisfactory proof of Total Disability to [insurer]"); Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089-90 (9th Cir.1999)(en banc)(benefits due "upon receipt of satisfactory written proof that you have become DISABLED").

Brigham also noted that only the Sixth Circuit, by an 8-6 en banc vote, held that discretionary review is triggered by language requiring "satisfactory proof" without specification of who must be satisfied. Brigham at 81-82 (citing Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556-58)(6th Cir. 1998)).   On the other end of the spectrum, only the Second Circuit suggested, in dicta, that even "satisfactory to us" language was inadequate to convey discretion. Brigham at 81-82 (citing Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251-52 (2d Cir.1999)).

Although the appellant in <u>Brigham</u> had failed to raise the issue of the correct standard at the trial level, the First Circuit determined that the "satisfactory to us" language was adequate and that "the widespread acceptance of the view that the language here triggers discretionary review assures us that adhering to our raise-or-waive rule results in no injustice in this case." <u>Brigham</u> at 82.

When examined under the principles stated in <u>Brigham</u>, it is clear that the language of the Plan in the instant case is insufficient to convey discretionary authority on LINA.   Although LINA maintains that the Plan's language is "very similar" or "nearly identical" to that triggering the "arbitrary and capricious" standard of review, there is a significant difference:   The provision in the Plan merely states that "satisfactory proof of disability must be provided to the Insurance Company," without specifying <u>to whom</u> such proof must be satisfactory.   Only the Sixth Circuit has deemed such language sufficient to trigger "arbitrary and capricious" review.   <u>Brigham</u> indicates, however, that the First Circuit will likely follow the majority of Circuits on this question and require an indication that proof of disability must not only be satisfactory, but that it must be satisfactory <u>to the administrator</u>. Accordingly, this Court finds that LINA's decision to terminate Figueiredo's benefits is not entitled to deferential review; this Court will review the administrative record de novo.

## Conclusion

For the reasons stated herein, each party is directed to file an additional memorandum of no more than ten (10) pages within sixty (60) days of the date this Memorandum and Order is issued.  The memoranda shall address (1) whether, when viewed under the *de novo* standard deemed applicable in this matter, LINA's termination of Figueiredo's long term disability benefits was in error; and (2) if such termination was in error, what appropriate remedy may be ordered by this Court.


SO ORDERED.

*Mary M. Lisi*
_____
Mary M. Lisi
Chief United States District Judge

March *1*, 2010

14